Filed 4/14/23

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| A.F., <br><br> Appellant, <br><br> v. <br><br> JEFFREY F., <br><br> Respondent. | D079919 <br><br> (Super. Ct. No. 21FDV01528N) |

APPEAL from an order of the Superior Court of San Diego County, Sharon L. Kalemkiarian, Judge. Affirmed in part, reversed in part.

Beatrice L. Snider, John L. Romaker, and Alexandria M. Jones, for Appellant.

No appearance for Respondent.

INTRODUCTION

When A.F. was 11 years old, she applied for a domestic violence restraining order (DVRO) against her father, Jeffrey F. (Father), who holds joint legal custody with her mother, Andrea F. (Mother). Mother was the original guardian ad litem (GAL), and she retained attorney Edward Castro to represent A.F. Father moved to disqualify Mother as the GAL and Castro as A.F.'s counsel and was successful. A.F. appealed the July 16, 2021 order disqualifying Castro.

While that appeal was pending, A.F. turned 12 years old, and the court did not appoint a new GAL.  Although A.F. brought the petition on her own behalf, the family court in her parents' dissolution matter, case No. DN171362 (the dissolution matter), appointed a "minor's counsel"[1] to represent her best interests there, in anticipation of changes to the custody and visitation arrangement that could result from the outcome in the present case, case No. 21FDV01528N (the DV matter).

A.F., on her own behalf, retained a new attorney, Aaron Smith, to represent her in the DV matter.  The court reviewed that contract and rejected the fee agreement between A.F. and Smith for numerous reasons, including that there was a potential conflict of interest from having her maternal grandfather (Grandfather) serve as a third-party guarantor.  The court also interviewed A.F. and determined she was not competent to retain counsel independently, and it found that Smith did not meet the requirements detailed by the California Rules of Court, rule 5.242[2] to serve as a "minor's counsel."  So, the court removed Smith as A.F.'s attorney, appointed a "minor's counsel" in the DV matter, and prohibited Smith from replacing the attorney the court appointed as a "minor's counsel."

---

[1]    We use the term "minor's counsel" throughout our opinion because that is the language the superior court used in its order.  "Minor's counsel" references an attorney appointed under chapter 10 of the Family Code who "is charged with the representation of the child's best interests." (Fam. Code, § 3151, subd. (a); see also *id.* at § 3150, subd. (a) [explaining the court can appoint private counsel to represent the interests of children in custody or visitation proceedings].)

[2]    Further references to "Rule" or "Rules" are to the California Rules of Court unless otherwise specified.

2

A.F. appeals, contending that the matter of selecting her attorney should have been automatically stayed pending the outcome of the appeal of the court's order disqualifying Castro. She also contends it was error to appoint a "minor's counsel" in the DV matter; it was improper to disqualify her attorney based on the rejection of the fee agreement and the lack of Smith's qualifications in compliance with Rule 5.242; and her due process rights were violated because the court interviewed her without notice or an opportunity to be heard.

We conclude that the court had subject matter jurisdiction to act in the DV matter while the first appeal was pending because her original attorney substituted out of the case. We reverse the order appointing a "minor's counsel," which is improper in a DV matter where a minor seeks a restraining order under the Domestic Violence Prevention Act (DVPA) (Fam. Code,[3] § 6200 et seq.). We affirm the court's order voiding the agreement between A.F. and Smith and removing Smith as her attorney on the basis that A.F. lacked competency to select her attorney independently. However, we reverse the order prohibiting Smith from serving as A.F.'s attorney in the matter because it was an abuse of discretion to completely disqualify him on the basis that the court rejected the fee agreement or that he failed to meet the requirements of Rule 5.242. Finally, while we agree that the court failed to provide proper notice to A.F. before interviewing her, we conclude this conduct did not prejudice A.F.

## BACKGROUND AND PROCEDURAL FACTS

On April 2, 2021, Mother, as GAL, filed a petition for a domestic violence restraining order under the DVPA against Father on behalf of A.F.

---

[3] Further statutory references are to the Family Code unless otherwise specified.

3

Castro, Mother's former divorce attorney, was hired to represent A.F. in the DV matter. The original petition also included a request to modify custody orders.

Father moved to disqualify Castro in both the dissolution and DV matters. He also requested reunification therapy, individual therapy, and appointment of a "minor's counsel" for A.F. The court concluded those requests were improper for the DV matter and could only be raised in the dissolution matter, where Father and Mother were the parties. It vacated the custody and visitation order sought in the DVRO petition.

On July 16, 2021, the court in the DV matter disqualified Castro from representing either A.F. in the DV matter or Mother in the dissolution matter. It also removed Mother as the GAL, noted the parents had not reached an agreement on who would be an appropriate GAL, and invited them to set an ex parte hearing to address the conflict.

On July 21, 2021, A.F. appealed the disqualification of Castro.

On July 28, 2021, the court called the dissolution matter and the DV matter together. The court explained it was contemplating appointing a "minor's counsel" in the dissolution matter to advise the court, to present evidence not heard from the minor, and to help determine whether a GAL should be appointed. The court appointed attorney Stephanie Mendez to serve as A.F.'s "minor's counsel" in the dissolution matter.

On August 16, 2021, attorney Smith substituted in for Castro as the attorney of record for A.F.

On August 31, 2021, A.F. filed an ex parte application in the DV matter asking the court to enforce an automatic stay based on the appeal challenging Castro's disqualification.

4

At the trial readiness conference for the DV matter held on September 22, 2021, Smith appeared for A.F., who was not present. In part because the court viewed the DV matter as essentially a custody and visitation issue, it believed it could appoint a "minor's counsel." So, the court viewed its options as appointing A.F. a GAL or a "minor's counsel." The court also told the parties that it was obligated to review and approve any contract for a minor, and Smith could not represent A.F. as her personal attorney without its approval. It told Smith he could not meet with A.F. until it reviewed (and approved) the fee agreement.

The court told the parties that at the November 1 hearing, it would consider the following issues: A.F.'s claim that there was an automatic stay in place, whether it would appoint a "minor's counsel," and its authority to review and approve the agreement between Smith and A.F. It said there would be "[n]o testimony, legal briefing only . . . ."

At the November 1, 2021 hearing, A.F.'s attorney argued that Castro's disqualification should be stayed, permitting him to serve as co-counsel in the DV matter. The court noted that Castro had substituted himself out of the matter and was no longer the attorney of record for A.F.; Smith was not simply associated in as additional counsel.[4] Thus, an automatic stay did not apply. It inquired of Smith whether he met the requirements of Rules 5.240, 5.241, and 5.242, and Smith admitted he did not. The court commented that it would create "a very, very dangerous and tumultuous situation in the family court if we started to allow minors to retain counsel who did not meet the requirements of minor's counsel appointed by the court." It said it "would not appoint counsel that didn't meet those requirements . . . . [T]hose

---

[4] Smith represented to the court that the court clerk would not permit him to file anything while Castro was listed as the attorney of record.

requirements are there for a reason, and they're there to ensure that minor's counsel understands what its job is going to be." The court agreed to hear Smith's arguments on the matter, but it cautioned that there is "very specific training that is required to represent minors in the family court."

The court also explained it needed to be satisfied A.F. was competent to select counsel and to approve the contract before Smith could move forward as her attorney. Thus, it requested A.F.'s physical appearance so it could interview her in person that afternoon. The court told Grandfather and Mendez that they could tell A.F. that she did not need to be nervous, "[w]e're just going to chat." The court permitted the attorneys to observe the conversation remotely, but no one would be in the courtroom except the judge and A.F.

A.F. appeared that afternoon. The court began by explaining why it wanted to see A.F., telling her there would be a trial on the restraining order, and A.F. would have an attorney for that. The court asked if A.F. understood why the court wanted to meet with her, and A.F. asked the court to explain. The court asked A.F. if she remembered what her mom was called when she first filed the petition for the DVRO, and A.F. answered, "guardian ad litem." A.F. also remembered the name of her first attorney, Castro, but did not remember why the court would not allow Castro to represent her. When asked if A.F. understood what the conflict of interest was, A.F. answered that Castro represented her mom in the divorce case and then represented A.F., but she could not explain why that might create a conflict of interest. A.F. also could not remember what it meant that Castro appealed that order.

The court told A.F. it had to decide whether she understood what it would mean to have a contract with Smith. The court asked A.F. how she found Smith, and A.F. explained that Mother helped her. At first, A.F. said

6

Mother gave her a couple of different names and asked if there was one she liked, and that she thought there was another person she interviewed besides Smith, but ultimately she explained Smith was the only person she met.

The court asked A.F. about the agreement between A.F. and Smith. A.F. explained she asked Mother for help understanding some of it. A.F. told the court Smith was hired to represent her in the DV matter. A.F. could not remember what a retainer was, the meaning of service of process, or what a process server does. A.F. remembered that Grandfather signed the agreement, too, but she could not remember why. She said Mother and Grandfather were going to pay the bill, and she indicated she did not know she could be responsible herself for the bill; nor did she have any money to pay. The court asked A.F. if she would know what to do if she no longer wanted Smith to represent her, and A.F. said she did not know. If they had a disagreement over what Smith charged, A.F. also did not know what she would do, and she did not know how much he was charging her.

A.F. told the court she would rather hire her own attorney than have the court appoint one so she could choose who was best for her, but she could not explain how she would make that choice.

The court issued its written order on November 8, 2021. It did not approve the contract between A.F. and Smith. Instead, it asked Mendez to represent A.F. in the DV matter "as part of her duties as minor's counsel." Although the court found that A.F. had the right to hire her own attorney, it found the contract between A.F. and Smith void and concluded he could not represent A.F. in the DV matter. It determined that A.F. "did not have the capacity to enter the contract with Attorney Smith—she did not understand why she was hiring him or the terms of his engagement." It explained that

7

while A.F. "understood what she had hired [Smith] to do, she was not aware of the most basic information required of a client."

The court separately concluded Smith could not represent A.F. in the DV matter because he did not meet the requirements of Rule 5.240 et seq., outlining the standards that must be met by a "minor's counsel" appointed by the court, and he did not present alternative qualifications.

Finally, the court explained that "there could be potential problems" in permitting A.F.'s maternal grandfather to act as a guarantor of the contract with Smith. Specifically, the court noted that Rule 1.8.6 of the Rules of Professional Conduct prohibits an attorney from entering an agreement in which a third party pays unless the lawyer obtains the client's informed written consent. A.F. had not initialed that paragraph, and the court concluded she was not competent to provide the required consent.

Finally, the order stated that Smith could not "represent [A.F.] in [the] proceeding" and also prohibited Smith from substituting in for Mendez.

On November 18, 2021, A.F. appealed the order.

On January 12, 2022, we stayed all orders embraced in the court's July 16, 2021 order disqualifying counsel. Castro appeared on behalf of A.F. in an ex parte hearing on January 14, 2022, at which the court removed Mendez as "minor's counsel" in the dissolution and DV matters.

DISCUSSION

I.

Subject Matter Jurisdiction

A.F. contends the court lacked subject matter jurisdiction to address issues related to her legal representation because the issue of her first attorney's disqualification was pending appeal.

8

When the evidence is not in dispute, subject matter jurisdiction is a legal issue, which we review de novo. (*Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 42.) The court disqualified A.F.'s first retained attorney, Castro, an order which A.F. appealed. At the time of the hearing at which the court appointed a "minor's counsel" in the DV matter, that appeal was pending.

Code of Civil Procedure section 916, subdivision (a) explains that the perfecting of an appeal stays proceedings in the trial court "upon the . . . order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the . . . order, but the trial court may proceed upon any other matter embraced in the action and not affected by the . . . order." The purpose of the automatic stay provision is to preserve the status quo and protect the appellate court's jurisdiction. (*Varian Medical Systems Inc. v. Delfino* (2005) 35 Cal.4th 180, 189 (*Varian*).)

"[A]n appeal does not stay proceedings on 'ancillary or collateral matters which do not affect the judgment [or order] on appeal' even though the proceedings may render the appeal moot. [Citation.]" (*Varian, supra,* 35 Cal.4th at p. 191.) Thus, "an appeal from an order denying a motion to disqualify counsel does not automatically stay further trial court proceedings on the merits because such proceedings would occur regardless of whether the reviewing court affirms or reverses the order. [Citation.]" (*Ibid.*)

However, an order disqualifying an attorney is treated differently. "[A]n appeal of an order disqualifying an attorney automatically stays enforcement of the order." (*URS Corp. v. Atkinson/Walsh Joint Venture* (2017) 15 Cal.App.5th 872, 887 (*URS*).) The remaining trial court proceedings are stayed in such a situation if they conflict with the appellate court's jurisdiction over the appeal. (*Id.* at p. 888.)

9

Here, the question is whether the ongoing proceedings in the DV matter conflicted with the appellate court's jurisdiction over the selection of a particular attorney at the outset of litigation. Case law suggests that an appealed order that disqualifies counsel establishes a mandatory injunction because its enforcement changes the positions of the parties and requires them to act in accordance with the order. (See *URS*, *supra*, 15 Cal.App.5th at pp. 884-885.) Thus, an order disqualifying an attorney is automatically stayed because doing so prevents mooting the appeal through the replacement of counsel. (*Id.* at p. 886.)

In light of A.F.'s first appeal, we issued an order staying the disqualification of counsel on January 12, 2022. Although the pending appeal automatically stayed the order disqualifying Castro, because A.F. retained a different attorney and substituted Smith for Castro, there was no longer any conflict between her chosen representation and the appeal. In other words, A.F.'s decision to replace Castro eliminated any need to stay the pending litigation, and the court had subject matter jurisdiction to move forward.

## II.

## Appointment of a "Minor's Counsel"

A.F. contends that the court's appointment of a "minor's counsel" in the DV matter was not statutorily authorized.[5]

Statutory interpretation is a question of law, subject to de novo review. (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.) " 'As in any case

---

[5] A.F. filed a supplemental "Suggestion of Mootness" motion on March 8, 2023. In it, she indicates no subsequent "minor's counsel" was appointed, thereby making the appropriateness of appointing "minor's counsel" potentially moot. "[T]here are three discretionary exceptions to the rules regarding mootness: (1) when the case presents an issue of broad public interest that is likely to recur [citation]; (2) when there may be a recurrence of the controversy between the parties [citation]; and (3) when a material

10

involving statutory interpretation, our fundamental task is to determine the Legislature's intent so as to effectuate the law's purpose.' " (*People v. Cole* (2006) 38 Cal.4th 964, 974; *People v. Murphy* (2001) 25 Cal.4th 136, 142.) We examine the statutory language and give it a plain and commonsense meaning. (*Cole*, at p. 975.) If the statutory language is unambiguous, then the plain meaning controls. (*Ibid.*) If the language supports more than one reasonable construction, we can look to extrinsic aids like legislative history and ostensible objectives. (*Ibid.*; *In re Young* (2004) 32 Cal.4th 900, 906.)

The written order asks Mendez to represent A.F. in the DV matter "as part of her duties as minor's counsel," a role to which she was appointed in the dissolution matter. Accordingly, we begin by evaluating the statutes that authorize appointment of a "minor's counsel." These provisions primarily appear in division 8 of the Family Code, addressing child custody.

Section 3150, subdivision (a) authorizes the court to appoint private counsel to represent the interests of the child in a custody or visitation proceeding if the court determines it would be in the best interest of the child to do so, so long as appointed counsel meets the requirements of Rules 5.240, 5.241, and 5.242. Section 3011 provides a non-exhaustive list of specific factors a court must consider when determining the custody and visitation arrangement that is in the child's "best interest." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 31-32; see also §§ 3011 [listing factors to determining "bests interest" of child in custody or visitation proceeding]; 3020, subd. (a)

---

question remains for the court's determination [citation]." (*Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga* (2000) 82 Cal.App.4th 473, 479-480.) We apply our discretion in this case because the issue of whether the court has authority to appoint a "minor's counsel" in a DV matter is an issue of general public interest. Moreover, A.F.'s status as a minor suggests this issue could arise again within the DV matter.

[policy is to ensure child's health, safety, and welfare is court's primary concern in determining "best interest" of child]; 3040, subd. (a) [prioritizing preferences according to the child's "best interest"].)

Section 3151 provides that "[t]he child's counsel appointed under this chapter is charged with representation of the child's best interests," and it clarifies that the counsel's role "is to gather evidence that bears on the best interests of the child, and present that admissible evidence to the court . . . ." Additionally, "[i]f the child so desires, the child's counsel shall present the child's wishes to the court." (§ 3151, subd. (a).)

These statutes make clear that the appointment of a "minor's counsel" occurs in the context of a custody or visitation dispute, not in a civil DVRO action. Section 3150 specifies that the authority to appoint counsel to represent a child occurs "in a custody or visitation proceeding," and section 3152 charges the attorney with representing the child's "best interests," a custody consideration. (See also §§ 3011; 3020, subd. (a); 3040, subd. (a).) Moreover, section 3151 identifies a child's best interests and a child's wishes as distinct. (See also *In re David C.* (1984) 152 Cal.App.3d 1189, 1207-1208 [explaining appointed counsel for child could conclude a child's best interests fall contrary to the stated desires of the child].)

The rules identified in section 3150 further highlight that this authority relates to determining the minor's "best interest" in a custody dispute. For example, Rule 5.240 offers eight factors the court should consider in determining whether to appoint a "minor's counsel," including whether the best interest of the child appears to require independent representation. (See also *In re Marriage of Metzger* (2014) 224 Cal.App.4th 1441, 1446.) Further, Rule 5.242, which governs counsel appointed to represent a minor in a custody or visitation proceeding under section 3150,

12

references the "best interest" standard identified in section 3151. (Rule 5.242(a), (i), (j).) The focus on the child's "best interests" in custody and visitation matters underscores that the role a "minor's counsel" plays is distinguishable from that of an attorney who represents a minor in a DVRO action.

We addressed the role of a "minor's counsel" in our previous opinion, in *A.F. v. Jeffrey F.* (2022) 79 Cal.App.5th 737. There, we contrasted the roles of a "minor's counsel" and the minor's attorney in a DVRO action: "A neutral minor's counsel in a dissolution plays an entirely different role than counsel hired in a civil matter. In family court, counsel for a minor has a statutorily-imposed duty to present to the court recommendations based on what the attorney believes is in the best interests of the child in addition to the child's wishes. [Citations.] In a civil matter, attorneys representing minors—or any other party who has a GAL—are bound by Business and Professions Code section 6068 and the State Bar Rules of Professional Conduct and have an obligation to zealously represent their clients' interest within the bounds of the law. [Citations.]" (*Id.* at pp. 751-752.)

We further noted that because A.F. raised her allegations in a DVRO petition as permitted by the DVPA, and not in the custody context, she was a party to the action itself and therefore entitled to her own attorney, distinct from a "minor's counsel." (*A.F. v. Jeffrey F.*, *supra*, 79 Cal.App.5th at p. 752, citing §§ 6211, subds. (f), 6301, subd.(a), 6301.5.) Thus, we have already, at least implicitly, addressed this issue.[6]

In the matter before us, the court recognized A.F. has a right to hire her own attorney, but after finding that A.F. was not competent to select

---

[6] The court issued the appealed order on January 4, 2022. We filed our opinion in *A.F. v. Jeffrey F., supra*, 79 Cal.App.5th 737 on May 18, 2022.

13

counsel and that she did not have the capacity to enter a contract with Smith, the court appointed the same attorney previously appointed as a "minor's counsel" in the dissolution matter to represent A.F. "as a part of her duties as minor's counsel." This was error. A.F. is entitled to her own attorney in the DV matter.

We observe that even though the DV matter and the dissolution matter are distinct, they are related because the outcome of the DVRO request will impact custody and visitation. Either the court will issue the restraining order, which conflicts with the joint custody order, or it will deny the request, at which time Father will seek support in reunifying with A.F. Thus, while the custody determinations will happen in the separate dissolution matter, we understand the court's desire to make decisions with the full picture in mind.

We also acknowledge Father's concern that A.F.'s decision to pursue a DVRO with Mother as her GAL initially, instead of Mother separately seeking a change in custody order in the dissolution matter, avoided the traditional child custody procedures. We understand one consequence of this approach has been that Father cannot visit with A.F. pending the outcome of the DV matter, in contrast to the options available for ongoing supervised contact available through traditional custody and visitation procedures. (See § 3100, subds. (a), (c)). We are sensitive to Father's concern that these tactics are driven by Mother instead of A.F. However, the law is clear. A.F. has the right to file a DVRO petition under the DVPA on her own behalf.

### III.

### Removal of Smith as Attorney for A.F.

After the court ordered a "minor's counsel" for A.F. in the DV matter, it voided the purported contract between A.F. and Smith, and it effectively

14

disqualified Smith, explaining that A.F. would "not be permitted by the Court to substitute Mr. Smith in for her appointed counsel, Ms. Mendez." The court offered three reasons for its decision. First, it concluded A.F. did not have the capacity to enter the contract with Smith. Second, it similarly found that A.F. could not understand the possible conflict arising from the third-party payment detailed in the contract with Smith and therefore could not waive it. Third, it found that Smith did not meet the standards set forth in Rule 5.240, which details the requirements of an appointed "minor's counsel." We address each of the court's reasons for removing Smith separately.

## A.  Standard of Review

We review an attorney's disqualification for an abuse of discretion (*In re Marriage of Zimmerman* (1993) 16 Cal.App.4th 556, 561; *Jessen v. Hartford Casualty Ins. Co.* (2003) 111 Cal.App.4th 698, 705) and "accept[ ] as correct all of [the court's] express or implied findings supported by substantial evidence." (*City National Bank v. Adams* (2002) 96 Cal.App.4th 315, 322.) We presume the trial court's order is correct, and we indulge all presumptions to support the order, resolving conflicts in favor of the prevailing party and the trial court's resolution of any factual disputes. (*Zimmerman*, at pp. 561-562.) "In exercising discretion, the trial court is required to make a reasoned judgment which complies with applicable legal principles and policies." (*Id.* at p. 561.) "We will reverse the trial court's ruling only where there is no reasonable basis for its action." (*City National Bank*, at p. 323.)

## B.  Capacity and Competency to Contract

The court considered whether A.F. had the capacity to hire Smith. It opined that its authority to make this inquiry derives from Civil Code

section 1550 and Family Code section 6602, and it found *Akkiko M. v. Superior Court* (1985) 163 Cal.App.3d 525 (*Akkiko*) instructive.

*Akkiko* occurred in the dependency context. (*Akkiko*, *supra*, 163 Cal.App.3d at p. 527.) The primary conflict in *Akkiko* is not present here. There, the court considered the interplay between Welfare and Institutions Code sections 317 and 318, which direct a court to appoint counsel, and Welfare and Institutions Code section 349, which specifies that a dependent minor has the right to select counsel of his or her choosing. The Department of Social Services argued that the minor could not appoint counsel of her choosing because the litigation had to be managed by a court-appointed GAL. (*Akkiko*, at pp. 527-528.) But the appellate court explained that in the dependency context, the role of the GAL was "of a limited nature, designed primarily to assure federal assistance" and "many of the responsibilities normally associated with a guardian ad litem have been placed upon counsel[ ] . . . by [Welfare and Institutions Code] section 318 . . . ." (*Akkiko*, at pp. 529-530.) Thus, in the dependency context, the presence of a GAL did not prevent the dependent minor from selecting an attorney. Still, the appellate court limited the minor selecting his or her own attorney to a situation in which the court was "satisfied that the minor is competent to select counsel" and in which "counsel is prepared to meet the obligations imposed by section 318." (*Akkiko*, at p. 530.)

Unlike statutes in the dependency context, nothing in the DVPA expressly authorizes a minor to select an attorney independently. However, the court was persuaded that a minor petitioning for a DVRO, like a minor in the dependency context, would still need to be competent to retain his or her own counsel, and the selected attorney would need to meet certain statutorily-based requirements, here Rule 5.242. As we next detail, because

16

we agree that a minor's competency is a prerequisite to retaining counsel of his or her choosing, and because the court found A.F. lacked competency and capacity to contract with Smith, its removal of Smith did not abuse its discretion. However, its prohibition on Smith serving as an attorney for A.F. in the DV matter under any circumstance was error.

To enter a contract with counsel, A.F. must first be capable of contracting. (Civ. Code, § 1550.) A person who lacks capacity to make decisions must appear by a guardian, conservator, or GAL. (Code Civ. Proc., § 372; see, e.g., *Briggs v. Briggs* (1958) 160 Cal.App.2d 312, 318 (*Briggs*) [defendant incompetent due to insanity could appear only by GAL]; *Garbutt v. Campbell* (1955) 130 Cal.App.2d 167, 168 [general rule is that infant must appear by guardian or GAL].) This is consistent with section 6601, which permits a minor[7] to enforce his or her rights in a civil action "in the same manner as an adult, *except that a guardian must conduct the action or proceedings*" (§ 6601, italics added) and with Code of Civil Procedure section 372, which requires minors, as well as those who lack legal capacity to make decisions, to appear by a guardian or GAL appointed by the court in which the proceeding is pending or by a judge in the case. Further, even Family Code section 6229 and Code of Civil Procedure section 374, which permit minors under age 12 to appear and request restraining orders without having an attorney present, still require the presence of a guardian ad litem. This is because minors generally lack capacity to sue on their own. (See *Johns v. County of San Diego* (1997) 114 F.3d 874, 877-878.) Thus, it was proper to evaluate A.F.'s competency and capacity to independently select counsel.

---

[7] The Family Code defines a minor as "an individual who is under 18 years of age." (§ 6500.)

The court interviewed A.F. and, based on the interview, it concluded A.F. "did not have the capacity to enter the contract" because "she did not understand why she was hiring him or the terms of his engagement." The court found that A.F. was "not aware of the most basic information required of a client." A.F. was not aware of what her attorney was charging or the definition of "retainer," could not explain why she selected this particular attorney, and did not know how to discharge him if she became dissatisfied. A.F. told the court she wanted to hire her own attorney, not have one appointed, but she could not explain why.[8]

A.F. does not challenge these factual findings in her appeal. Instead, she contends that the proper consequence of the court's finding is simply that the fee agreement is not enforceable. We agree that the court's authority to reject a fee agreement is not synonymous with the court's authority to disqualify counsel. However, the court did not simply reject the fee agreement. It found the contract void because it concluded A.F. was not competent to select her own counsel. This finding did not abuse the court's discretion.

### C. Third-Party Fee Agreement

A.F. does not challenge the court's authority to review the agreement; she questions the consequences of the court's failure to approve the agreement. Here, the court rejected the fee agreement and voided the contract between Smith and A.F. because it included Grandfather as a third-party guarantor.

---

[8]    The finding of incompetency suggests the court should have required Minor to appear by GAL under these circumstances, not appoint a "minor's counsel." (Civ. Proc. Code, § 372; see, e.g., *Briggs, supra*, 160 Cal.App.2d at p. 318.)

Section 6602 states: "A contract for attorney's fees for services in litigation, made by or on behalf of a minor, is void unless the contract is approved, on petition by an interested person, by the court in which the litigation is pending . . . . If the contract is not approved and a judgment is recovered by or on behalf of the minor, the attorney's fees chargeable against the minor shall be fixed by the court rendering judgment." California courts have interpreted contracts for legal services usually to be a necessary; thus, while a contract that is not approved by the court is not enforceable, the reasonable value of the attorney fees for legal work conducted on behalf of a person unable to make a valid contract remains recoverable. (*Leonard v. Alexander* (1942) 50 Cal.App.2d 385, 387, 388-389; see *In re Estate of Doyle* (1932) 126 Cal.App. 646, 647-648 [person incompetent to enter binding contract liable for reasonable value of attorney services rendered in attempt to restore person deemed incompetent to capacity]; see also *Chiu v. Chiu* (2022) 86 Cal.App.5th 929, 937, fn. 12 [explaining section 6602 governs attorney's ability to recover fees in a contract with a minor and does not preclude a minor from retaining counsel].) A.F. does not directly challenge the court's decision to reject the fee agreement or otherwise claim the court's rationale was misguided. Instead, she simply contends the resulting disqualification was an improper consequence. We agree.

However, as we have already explained, the court did not remove Smith simply because it rejected the fee agreement. Its determination that A.F. lacked capacity to contract and was not competent to select an attorney independently impacted A.F.'s ability to enter an agreement that used a third-party guarantor as well. Rule 1.8.6 of the Rules of Professional Conduct prohibits an attorney from entering an agreement with or accepting compensation from a third party to represent a client without obtaining

19

informed, written consent from the client.  Not only did A.F. fail to provide informed, written consent by neglecting to initial the language reflecting her understanding, but her lack of capacity to enter the agreement separately prevented her from providing this consent.

Further, the court found a potential conflict of interest between Grandfather and A.F., noting that Grandfather had previously supported Mother in the dissolution matter in which Mother opposed shared custody with Father.  The court explained that if A.F. were to change her mind about seeking the DVRO or visiting with Father, Grandfather might pressure A.F. to pursue the matter anyway.

In her appellate brief, A.F. refers to this potential conflict as "hypersensitivity to ethical nuances," but she does not develop her complaint or explain why the court's concerns about the potential for influence or conflict of interest are unreasonable; nor does she explain why the court's determination that she lacks the capacity to waive potential conflicts is simply a "hypersensitivity."  Although she argues that the court failed to consider the substantial continuing effect standard, A.F. does not explain how this standard applies to (or is not impacted by) the third-party payment concerns the court expressed.  Thus, we deem this argument waived.  (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [waiving issues not supported by reasoned argument]; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 [appellate court not obligated to examine undeveloped claims].)

Although the court appropriately removed Smith based on A.F.'s incapacity to select him herself, disqualifying an attorney as a result of rejecting the fee agreement was an abuse of discretion because it incorrectly applied the law.

20

### D. Court's Evaluation of Counsel

A.F. contends that the court did not find that Smith's service as her attorney in the DV matter would prejudice her, and his removal was therefore improper. She indicates a court must first consider the "substantial continuing effect standard," which requires "a genuine likelihood that the attorney's misconduct will affect the outcome of the proceedings." She maintains that the court's determination that Smith lacked specialized qualifications does not meet that standard.

In *City of San Diego v. Superior Court* (2018) 30 Cal.App.5th 457, the case upon which A.F. relies for this proposition, we asked whether it was appropriate to disqualify the entire city attorney's office after one of its attorneys violated attorney-client privilege and former Rule 2-100 of the Rules of Professional Conduct. (*City of San Diego*, at pp. 469-470.) In that context, we explained that "disqualification of counsel is a prophylactic remedy designed to mitigate the unfair advantage a party might otherwise obtain if the lawyer were allowed to continue representing the client." (*Id.* at pp. 470-471.) To that end, we considered whether the " 'status or misconduct which is urged as a ground for disqualification will have a continuing effect on the judicial proceedings which are before the court. . . .' [Citation.]" (*Id.* at p. 471.)

The circumstances of the disqualification here are distinguishable because A.F.'s attorney did not achieve an unfair litigation advantage by violating any rules. Still, the court here considered Smith's "status" as a ground for effective disqualification. It expressed concern about the continuing effect of Smith's representation on the proceedings, explaining that family court has established standards for a "minor's counsel" that Smith did not meet. The court said that it would create "a very, very

21

dangerous and tumultuous situation in the family court if we started to allow minors to retain counsel who did not meet the requirements of minor's counsel appointed by the court." Its order states that those standards exist "to assure the children receive representation from attorneys with knowledge base and skill set required to represent a child effectively in a Family Court proceeding." Thus, Smith's failure to meet them would have a continuing effect on the representation. Moreover, although the court agreed to hear Smith's argument for why he was competent to represent a minor in family court, it found "[h]e did not present to the Court any alternative qualifications, other than the fact that he had been retained."

While the court appropriately considered the impact of Smith's continued representation in the matter, we nonetheless conclude that it abused its discretion by relying on the factors detailed in Rule 5.240 and the requirements in Rule 5.242, which "governs counsel appointed to represent the best interest of the child in a custody or visitation proceeding under Family Code section 3150." Those standards address appointment of a "minor's counsel," who, as we detailed *ante*, serves a different role for a different purpose than retained counsel in a DVRO matter. Rules 5.240 and 5.242 do not control the court's inquiry in this context. Thus, the reliance on Smith's failure to comply with Rule 5.242 as a basis for his disqualification was an abuse of discretion.

E. A.F.'s Due Process Rights

A.F. contends the court violated her due process rights by disqualifying her retained attorney without first providing her with reasonable notice and a meaningful opportunity to be heard.

Due process is a flexible concept that depends on all the circumstances of the case and a balancing of various factors. (*In re Earl L.* (2004) 121

Cal.App.4th 1050, 1053.) It requires notice that is reasonably calculated to apprise the interested parties of the pendency of the action and afford them an opportunity to object. (*In re Melinda J.* (1991) 234 Cal.App.3d 1413, 1418; *In re Justice P.* (2004) 123 Cal.App.4th 181, 188.)

The court informed the parties regarding the issues it would consider at the November 1 hearing: (1) its authority to review and approve the fee agreement; (2) its authority to appoint a "minor's counsel" in the DV matter; (3) whether the matter was stayed pending the outcome of the appeal. It emphasized that it would be hearing legal arguments and told the parties there would be "[n]o testimony, legal briefing only. . . ."

However, after hearing arguments from counsel, the court commented that it had to be satisfied that A.F. was competent to select counsel and had capacity contract, and it had to approve the contract. Thus, it needed to interview A.F. It asked A.F. to appear that afternoon.

That afternoon, A.F. appeared, and the court asked what she understood about Castro's disqualification due to conflict of interest. The court told A.F. it had to decide if she had "a good enough understanding of what a contract with an attorney would mean," so it was going to ask her some questions. It asked how she met her attorney, who else she spoke with, whether she met with or interviewed more than one possible attorney, and what she understood from reading the contract with Smith. It asked A.F. what Smith was hired to do, what role A.F. understood Grandfather to play in the agreement, and what A.F. would do if she had a disagreement with her attorney.

Because there was no GAL at this point in the proceedings and the court expressly prohibited Smith from meeting with A.F. before it ruled on the fee agreement, Smith presumably did not meet with A.F. to help her

23

prepare for the interview. Further, while the court did not expressly prohibit Grandfather or Mendez from explaining to A.F. why the court wanted to interview her, it instructed them to tell A.F. she did not need to be nervous because the court was "just going to chat" with her, without reference to the substance of the conversation. When A.F. appeared, the court asked her if she had an understanding about why the court wanted to meet with her, suggesting the court expected A.F. to know the purpose of the interview. A.F. was uncertain; she asked the court to explain the reason for their meeting. While A.F. knew about the pending hearing and the issues the court planned to consider, this series of events suggests A.F. did not have notice that she would need to appear personally or of the reason for her appearance.

A.F. and Smith knew the hearing would address her legal representation in the DV matter, and Smith argued the merits of her position at the hearing. To the extent that A.F.'s position is that she should have received notice regarding the interview in advance of the hearing date, it is not clear how that would have changed the outcome. She implies that her answers to questions could have been different with preparation from Smith, but we note the point of the interview was to determine what A.F. knew and understood on her own. Further, even if her attorney could have objected to the court's specific questions during the interview, A.F. does not explain how those objections would have led the court to a different conclusion. Although interviewing A.F. without A.F. knowing the purpose or topic of the interview was inappropriate, any due process violation resulting from problems with the notice did not prejudice A.F. (See *Chapman v. California* (1967) 386 U.S. 18; *In re Stacy T.* (1997) 52 Cal.App.4th 1415, 1425 [identifying standard for evaluating due process violation].)

24

We also do not find persuasive A.F.'s contention that the court's questions had little relevance to her capacity to contract. She does not develop this argument, but the court's questions suggest it considered many of the factors raised in Probate Code sections 811 and 812, which address capacity to make decisions. In particular, the court's questioning about her understanding of particular legal terms, like "retainer," as well as her understanding of why her first attorney was disqualified relate to her information processing skills, including the ability to reason logically and use abstract concepts. (See Prob. Code, § 811, subd. (a)(2).) Further, her responses regarding how she came to hire Smith, how she would go about evaluating whether to hire a particular attorney, and how she would fire an attorney relate to whether she can plan, organize, and carry out actions in self-interest. (*Ibid*.) These questions also addressed whether A.F. understood her rights, duties, and responsibilities under the contract she signed, as well as the risks associated with hiring an attorney or alternatives to hiring Smith. (*Id*., § 812, subds. (a), (c).)

F. Appointment of GAL

A.F. offers an additional reason Smith should not have been disqualified: the subsequent removal of Mendez as "minor's counsel" in the DV matter and appointment of a GAL. A.F. explains the court's subsequent appointment of a GAL could make the disqualification of Smith moot, because a GAL has the authority to waive conflicts of interest on a minor's behalf. However, the appealed order states that Smith "cannot represent

25

[A.F.] in this proceeding," and nothing before us indicates that has changed.[9] Further, after the appointed GAL passed away, the court declined to appoint a new GAL.[10]

We observe that Code of Civil Procedure section 372, subdivision (b)(1)(C) permits a 12 year old to appear without a guardian, counsel, or GAL to seek a restraining order, but it also grants the court discretion to appoint a GAL to assist the minor in obtaining the order. Given the court's findings regarding A.F.'s lack of competency to retain counsel on her own behalf, the appointment of a GAL to represent A.F.'s interests seems prudent if not necessary. As A.F. notes, a GAL oversees litigation-related interests: " 'In the adversarial context, the guardian ad litem's function is to protect the rights of the [minor], control the litigation, compromise or settle the action, control procedural steps incident to the conduct of the litigation, and make stipulations or concessions in the [minor] person's interests. [Citation.] In such cases, the guardian ad litem's role is "more than an attorney's but less than a party's" [Citation.]' " (*A.F. v. Jeffrey F., supra*, 79 Cal.App.5th at p. 747, quoting *In re Charles T.* (2002) 102 Cal.App.4th 869, 875-876.) Here, where the court concluded A.F. was not competent to select her own attorney or to waive any potential conflicts of interest, the court

---

[9] The minutes stated the court would "appoint another attorney for [A.F.] in the dissolution case," and noted the objection to the appointment of one in the DV matter. This information, in addition to the statements made in A.F.'s supplemental "Suggestion of Mootness" motion, indicates there is no longer a "minor's counsel" in the DV matter.

[10] We grant A.F.'s motion to augment the record to include the court's order denying the request to appoint her grandmother as GAL after her grandfather's death. The elimination of a GAL places any issues that could have been potentially mooted by the GAL's decision-making authority back in controversy.

26

should have appointed a GAL to protect A.F.'s rights and control the litigation. The subsequent removal of a GAL seems to contradict the court's earlier conclusion regarding A.F.'s competency without any corresponding finding that A.F.'s competency has changed.

## DISPOSITION

The portion of the order appointing a "minor's counsel" in the DV matter, case No. 21FDV01528N, is reversed. The portion of the order prohibiting Smith from representing A.F. in the DV matter is reversed. In all other respects, the order is affirmed. We express no opinion regarding whether Smith's disqualification or removal would be appropriate for some other reason.


HUFFMAN, Acting P. J.

WE CONCUR:


IRION, J.


DO, J.

27